USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/17/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
QIUPING YANG,                                                         :
:
                        Plaintiff,                                    :
:                    24-cv-3668 (LJL)
        -v-                                                           :
:                    OPINION AND ORDER
CONNIE NOLAN, District Director of New York                           :
District, U.S. Citizenship and Immigration Services, *et al.*         :
:
                        Defendants.                                   :
:
-------------------------------------------------------------------- X

LEWIS J. LIMAN, United States District Judge:

Defendants[1] move to dismiss the amended complaint of Plaintiff Quiping Yang ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction and, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief.  Dkt. No. 13.

## BACKGROUND

Plaintiff is a native and citizen of the People's Republic of China who, on June 27, 2012, was granted asylum by the United States Immigration Judge Sarah Burr. Dkt. No. 1 ¶¶ 6, 13. She has been residing in the United States with valid asylee status since her application was granted by the immigration court. *Id.* ¶ 13.

Plaintiff's I-589 Application for Asylum and Withholding of Removal was filed with United States Citizenship and Immigration Services ("USCIS") on June 3, 2011. *Id.* ¶ 14. The application was based on religious persecution in China. *Id.* ¶ 12. The application listed an

---

[1] Defendants are Connie Nolan, District Director of New York District, U.S. Citizenship and Immigration Services; Alejandro Mayorkas, Secretary of the Department of Homeland Security; Ur Jaddou, Director of U.S. Citizenship and Immigration Services; and Merrick Garland, Attorney General of the United States.

attorney, Vanessa Bandrich, as its preparer. *Id.* On December 18, 2012, the United States Attorney's Office for the Southern District of New York filed an indictment charging a group of 30 immigration service providers with committing immigration fraud through the filing of fraudulent asylum applications with the USCIS New York and Newark Asylum offices. *Id.* Bandrich was among the immigration service providers who were indicted. *Id.* On April 14, 2014, a jury convicted Bandrich and her co-defendants of one count of conspiracy to commit immigration fraud. *Id.* ¶ 15.[2]

Plaintiff, represented by new counsel, applied for adjustment of status to that of legal permanent resident on July 12, 2013. *Id.* ¶ 16. Plaintiff's I-485 application for adjustment of status remained pending with no further action for more than four years before United States Citizenship and Immigration Services issued a Request for Evidence ("RFE") on September 26, 2017. *Id.* ¶ 17. The RFE requested completed biographical and medical information forms, neither of which had been submitted with the original I-485, and sought clarification of certain alleged inconsistencies between the agency's immigration file and the information contained on Plaintiff's I-485 application. *Id.* Plaintiff replied to the RFE on October 17, 2017. *Id.* ¶ 19. On March 15, 2018, USCIS issued a Notice of Intent to Deny ("NOID"), finding Plaintiff's reply to the RFE insufficient to overcome the discrepancies in her adjustment application. *Id.* ¶ 20.

On May 21, 2018, USCIS denied Plaintiff's I-485 application. *Id.* ¶ 26; Dkt. No. 15-3. In doing so, the USCIS highlighted what it characterized as inconsistencies between Plaintiff's I-589 application for asylum and her I-485 application to adjust status. In Plaintiff's personal

---

[2] Twenty-six of the thirty defendants indicted pled guilty in 2013; Bandrich was among the four defendants who did not plead guilty but who were found guilty at trial. *Id.* Neither the indictment nor the evidence at trial referenced Plaintiff's I-589 or specifically cited her asylum application among the fraudulent applications filed by Bandrich. *Id.*

2

statement submitted with her I-589 asylum application, Plaintiff stated that she was a member of an underground church in China and had joined The Church of Grace to Fujianese in New York. Dkt. No. 15-3 at 4. [3] But in her Form I-485, she answered "N/A" to a question that asked her to list her "present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society, or similar group in the United States or in other places since your 16th birthday." *Id.* USCIS noted that Plaintiff failed to explain in her response to the RFE why she failed to list the churches when she filed the I-485. *Id.*

Next, USCIS found that there was "an inconsistency in the record related to whether [Plaintiff had] ever been arrested for breaking or violating any law or ordinance." *Id.* In her I-589 application for asylum, Plaintiff stated: "I was arrested by the Chinese government for my participation in a Christian underground church" and that the "police said we were having an illegal gathering." *Id.* at 4–5. However, in her Form I-485 application for adjustment, she answered "no" to the question whether she had "EVER, in or outside the United States been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations." *Id.* at 4–5. USCIS found that Plaintiff's explanation that she answered no to the question on the Form 1-485 because she considered the Chinese arrest a "political persecution, not a criminal arrest," did not "sufficiently explain the inconsistency." *Id.* at 5. It also found that her explanation that the interpreter made an inaccurate translation and that she did not understand the question to be "not plausible" and to imply "a lack of candor." *Id.* at 6.

The USCIS emphasized that Plaintiff's original asylum claim contained "common elements matching other asylum claims represented by Vanessa Bandrich," and is "consistent

---

[3] ECF pagination.

3

with the fraud scheme developed and prepared by Vanessa Bandrich." *Id.* at 6, 8. It stated that the inconsistent information between Form I-589 and Form I-485 "casts doubt on" whether Plaintiff was ever a member of an underground church in China. *Id.* at 6.

The USCIS stated that to determine if Plaintiff merited a favorable exercise of discretion, it weighted the positive and adverse factors in the record. It stated:

> USCIS has taken into consideration the following positive factors:
>
> - Your legal relatives in the U.S.;
> - Your lack of criminal history in the U.S.; and
> - Your length of lawful residence in the U.S.
>
> USCIS has taken into consideration the following adverse factors:
>
> - Your asylum claim strongly resembles a known fraud pattern, and you have not provided sufficient evidence to demonstrate where the truth lies;
> - Failure to initially list on your Form I-485 your membership in a Christian church in China, which was material to your asylum claim; and
> - Failure to initially include your arrest on Form I-485, which was a material aspect of your asylum claim.

*Id.* at 8.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in the United States District Court for the Eastern District of New York on March 6, 2024. Dkt. No. 1. The complaint sought a declaration that Plaintiff was eligible for adjustment of status under Section 209 of the Immigration and Nationality Act of 1952 ("INA"), and that the decision of USCIS to deny her adjustment of status was arbitrary and capricious, legally erroneous, and violated her due process rights. *Id.* at 63. It also sought to compel USCIS to grant her I-485 application to adjust status. *Id.* The Eastern District of New York transferred the case to this Court on consent on May 13, 2024. Dkt. No. 8.

On July 11, 2024, Defendants filed this motion to dismiss for lack of subject matter jurisdiction and failure to state a claim for relief. Dkt. No. 13. Defendants also filed a

memorandum of law and the declaration of Christopher Humphries, a USCIS official, in support of the motion. Dkt. Nos. 14–15. Plaintiff filed a response in opposition to the motion on July 25, 2024. Dkt. No. 18. Defendants filed a reply on August 1, 2024. Dkt. No. 20.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). If the defendant is challenging the legal sufficiency of a complaint's allegations, all factual allegations must be treated as true and all reasonable inferences must be drawn in favor of the complaining party. *See Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of [its] own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden

is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

## DISCUSSION

Defendants argue that pursuant to 8 U.S.C. § 1252(a)(2)(B), this Court lacks subject-matter jurisdiction to review USCIS's discretionary decision to deny Plaintiff's application for adjustment of status. Dkt. No. 14 at 1, 13–20. They also argue that the Administrative Procedure Act ("APA") cannot be used to circumvent a statute precluding judicial review, *id.* at 20–22, and that Plaintiff has no due process claim, *id.* at 22. Plaintiff responds that USCIS has a non-discretionary duty to consider certain relevant factors in its discretionary determination, and the Court has jurisdiction to review whether USCIS improperly omitted these relevant factors. Dkt. No. 18 at 1–2. Defendants are correct that this Court lacks jurisdiction to review USCIS's discretionary decision and that Plaintiff's claims must be dismissed.

## I.   Statutory Framework

Adjustment of status "refers to the procedure whereby the Attorney General exercises his discretion to grant lawful permanent resident status to an alien already physically present in the United States." *Adams v. Holder*, 692 F.3d 91, 100 (2d Cir. 2012). An individual who has been granted asylum may apply for adjustment of status to lawful permanent residency after being physically present in the United States for one year. 8 U.S.C. § 1159(b). This process is governed by Section 209(b) of the INA, codified at 8 U.S.C. § 1159(b), which states:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary of the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted relief who –
>
> (1) applies for such adjustment,
>
> (2) has been physically present in the United States for at least one year after being granted asylum,

(3) continues to be a refugee within the meaning of section 101(a)(42)(A) or a spouse or child of such a refugee,

(4) is not firmly resettled in any foreign country, and

(5) is admissible as an immigrant under this chapter at the time of examination for adjustment of such alien.

8 U.S.C. § 1159(b).  Other statutory provisions grant the Attorney General discretion to adjust the status of other categories of noncitizens.  *See Adams*, 692 F.3d at 98 (citing 8 U.S.C. §§ 1229b, 1255).  As set out by these statutes, adjustment is a two-step process "involving first, proof of . . . statutory eligibility for the adjustment, and second, an exercise of discretion by the Attorney General as to whether to grant such relief." *Acevedo v. Garland*, 2024 WL 1003714, at *1 (2d Cir. Mar. 8, 2024) (quoting *Singh v. Gonzales*, 468 F.3d 135, 138 (2d Cir. 2006)).

"The authority of a court to review agency decisions in the immigration context . . . is expressly limited by 8 U.S.C. § 1252(a)(2)(B)," which strips courts of jurisdiction over certain discretionary decisions.  *Ruiz v. Mukasey*, 552 F.3d 269, 274 (2d Cir. 2009); *see Kucana v. Holder*, 558 U.S. 233, 248 (2010).  The statute provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>
> (i)   any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)  any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[4] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

---

[4] "The phrase 'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151–1381." *Guyadin v. Gonzales,* 449 F.3d 465, 468 (2d Cir. 2006).

7

8 U.S.C. § 1252(a)(2)(B).

Clause (i) of this subparagraph lists specific provisions, each of which "addresses a different form of discretionary relief from removal" and "contains language indicating that the decision is entrusted to the Attorney General's discretion." *Kucana*, 558 U.S. at 246. Clause (ii) is "a catchall provision" covering any other decision for which "Congress itself set out the Attorney General's discretionary authority in the statute." *Id.* at 247–48. The Supreme Court has held with respect to clause (i) that § 1252(a)(2)(B) "prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions," rather than only "certain kinds of decisions" categorized as discretionary. *Patel v. Garland*, 596 U.S. 328, 338 (2022). In other words, if the overall decision is entrusted to the discretion of the Attorney General by statute, § 1252(a)(2)(B) strips courts of jurisdiction to review any aspect of that decision, and does not distinguish between "discretionary" and "nondiscretionary" issues within a discretionary decision. *See id.* at 341 ("[T]he bar on review applies to 'any judgment.' Had Congress intended instead to limit the jurisdictional bar to 'discretionary judgments,' it could easily have used that language.").[5]

However, Congress also created a significant exception to § 1252(a)(2)(B). Section 1252(a)(2)(D) restores jurisdiction for courts to review "constitutional claims or questions of law

---

[5] Justice Gorsuch, dissenting, noted the longstanding distinction drawn by many courts between "first-step 'eligibility' determinations and second-step 'discretionary' determinations." *Patel*, 596 U.S. at 359 (Gorsuch, J., dissenting); *see I.N.S. v. St. Cyr*, 533 U.S. 289, 307 (2001) ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand."). Justice Gorsuch suggested that § 1252(a)(2)(B) is most sensibly read "to target step-two discretionary decisions alone," preserving judicial review over eligibility determinations and related legal decisions made in the context of discretionary relief. *Id.* at 359–62. The majority rejected this traditional view, instead holding that "subparagraph (B)(i) precludes judicial review of all adjustment-of-status applications, whether an individual seeks to challenge the agency's step-one eligibility determination or its step-two discretionary judgment." *Id.* at 362.

8

raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D); *see Wilkinson v. Garland*, 601 U.S. 209, 218 (2024) (describing the interaction between § 1252(a)(2)(B) and (D)).  A noncitizen may file a petition for review to the court of appeals under that section only in the context of a final order of removal.  *See* 8 U.S.C. § 1252; *Patel*, 596 U.S. at 345.  Thus, "subparagraph (D) preserves review of legal and constitutional questions" that arise in the course of a discretionary decision, but only "when raised in a petition for review of a final order of removal." *Patel*, 596 U.S. at 345.

## II.   Subject-Matter Jurisdiction

Defendants argue that the text of Section 1159(b) clearly commits the decision to adjust an asylee's status to the discretion of the Attorney General.  Dkt. No. 14 at 13.  Therefore, the decision is unreviewable under § 1252(a)(2)(B)(ii).  *Id.*  They also argue that USCIS's decision here presents no question of law under § 1252(a)(2)(D) because it was based on a discretionary weighing of positive against negative factors, and that in any case the exception for questions of law only applies to petitions to the court of appeals.  *Id.* at 4, 18–19.  Plaintiff agrees that this Court lacks jurisdiction to review the agency's discretionary weighing of positive and negative factors.  Dkt. No. 18 at 1.  However, Plaintiff argues that the agency is required by precedent to consider "each factor relevant" to the exercise of discretion "on an individualized basis," and that this requirement is nondiscretionary and subject to judicial review.  *Id.* at 9–11.  Plaintiff specifically argues that the agency failed to consider "the hardship of removal" as required by agency precedent.  *Id.* at 2, 12–13.  Plaintiff does not argue that a question of law exists pursuant to § 1252(a)(2)(D), but rather that "the bar [of § 1252(a)(2)(B)] itself is inapplicable" because "the failure to take action required by precedent" does not fall within § 1252(a)(2)(B).  *Id.* at 12–13.

It is undisputed that Section 1159(b) generally falls within Section 1252(a)(2)(B)'s jurisdictional bar. Section 1159(b) explicitly states that such adjustment of status is "in the Secretary's or the Attorney General's discretion." 8 U.S.C. § 1159(b). Because Congress expressly "set out the Attorney General's discretionary authority in the statute," the jurisdictional bar of § 1252(a)(2)(B)(ii) applies. *Kucana*, 558 U.S. at 247; *see Morina v. Mayorkas*, 2023 WL 22617, at *6 (S.D.N.Y. Jan. 3, 2023) ("[B]y its plain terms, the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) bars this Court from reviewing USCIS's ultimate discretionary decision to deny Plaintiff relief under 8 U.S.C. § 1159(b)."); *Azatullah v. Mayorkas*, 2023 WL 5935028, at *4 (S.D.N.Y. Sept. 12, 2023); *Mia v. Renaud*, 2023 WL 7091915, at *3 (E.D.N.Y. Oct. 26, 2023).

Plaintiff argues that the Court has jurisdiction to review USCIS's failure to consider her individualized hardship, because USCIS had a nondiscretionary duty to consider this factor as part of the decision-making process. Dkt. No. 18 at 9–13. However, this distinction between discretionary and nondiscretionary aspects of a decision "the authority for which is specified under this subchapter to be in the discretion of the Attorney General" is inconsistent with the Supreme Court's holding in *Patel*. 8 U.S.C. § 1252(a)(2)(B)(ii); *see Patel*, 596 U.S. at 341. *Patel* held that 8 U.S.C. § 1252(a)(2)(B)(i) stripped courts of jurisdiction to review "any and all decisions relating to the granting or denying of discretionary relief," and "squarely rejected the argument, urged by the Government, that the word 'judgment' in Section 1252(a)(2)(B)(i) referred 'exclusively to a decision that requires the use of discretion.'" *Azatullah*, 2023 WL 5935028, at *4–5 (quoting *Patel*, 596 U.S. at 337). Because the decision whether to grant adjustment of status is within the discretion of the attorney general, and what consideration to give Plaintiff's "hardship" is part of that decision, § 1252(a)(2)(B) strips a district court of

jurisdiction to review it. *See Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023) ("*Patel* precludes review of all kinds of agency decisions that result in the denial of relief — whether they be discretionary or nondiscretionary, legal or factual."); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1025 (7th Cir. 2023) (holding that under *Patel*, federal courts lack jurisdiction to review a purported legal error in an adjustment-of-status denial, except through a petition for review from a final order of removal); *Morina*, 2023 WL 22617, at *9.[6]

Although there are several differences between *Patel* and this case, none place Plaintiff's claims here outside the scope of that decision. *Patel* was decided in the context of a removal proceeding and technically did not decide whether discretionary USCIS decisions would be "wholly insulated from judicial review" outside of the context of a removal proceeding. *Patel*, 596 U.S. at 345–46. Thus, the Second Circuit has stated that "there is an open question as to whether we have jurisdiction to review any aspect of a USCIS decision denying discretionary relief, such as a status adjustment, outside of a removal proceeding." *Rahman v. Mayorkas*, 2023 WL 2397027, at *1 (2d Cir. Mar. 8, 2023). However, the logic of *Patel* clearly establishes that review is precluded outside of a removal proceeding. *See Morina,* 2023 WL 22617, at *8 (noting that the Supreme Court "clearly signaled the answer" to this question). If subparagraph (B) strips jurisdiction to review all discretionary relief except as described in subparagraph (D), and subparagraph (D) only allows review in the context of final orders of removal, then no

---

[6] Plaintiff contrasts 8 U.S.C. § 1159(b) with other statutory provisions that more squarely place choices about relevant factors and evidence to be considered, as opposed to merely the weighing of such factors and evidence, within the discretion of the agency. Dkt. No. 18 at 9 (citing 8 U.S.C. §§ 1154(a)(1)(A)(viii), (a)(1)(B)(i); 8 U.S.C. § 1186a(c)(4)). However, the attempt to draw subtle distinctions between aspects of the adjustment-of-status decision which are or are not discretionary is foreclosed by *Patel*'s holding that § 1252(a)(2)(B) is applicable to decisions "of whatever kind" that are part of the adjudication of the application for adjustment of status. *Patel*, 596 U.S. at 338–39.

review is available except in the context of final orders of removal. And subparagraph (B) explicitly states that it applies "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B). Thus, "every Court of Appeals that has considered the issue has concluded that judicial review of adjustment of status determinations made by USCIS outside of the removal context is barred." *Akinmulero v. Dep't of Homeland Sec.*, 2023 WL 3058014, at *1 (W.D. Wash. Apr. 24, 2023) (citing *Abuzeid*, 62 F.4th 578; *Britkovyy*, 60 F.4th 1024; *Doe v. Sec'y, U.S. Dep't of Homeland Sec.*, 2023 WL 2564856 (11th Cir. Mar. 20, 2023)); *see also Palacios v. Garland*, 2024 WL 3420403, at *4 (E.D.N.Y. July 8, 2024) ("Since *Patel*, district courts have held that courts lack jurisdiction to review USCIS's discretionary decision to deny applications for adjustment of status outside of the removal context.") (collecting cases). Section 1252(a)(2)(B) is not somehow inapplicable here simply because no removal proceedings have been initiated.

*Patel* also involved a slightly different clause of the jurisdiction-stripping statute. In *Patel*, the petitioner sought review of an adjustment-of-status decision under 8 U.S.C. § 1255, which is one of the provisions expressly listed in § 1252(a)(2)(B)(i). *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Patel*, 596 U.S. at 337. This case involves adjustment of status under 8 U.S.C. § 1159(b), which is not expressly enumerated in clause (i) of Section 1252(a)(2)(B). Rather, jurisdiction to review claims under § 1159(b) is stripped through the "catchall provision," clause (ii), which removes jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Kucana*, 558 U.S. at 246; 8 U.S.C. § 1252(a)(2)(B)(ii). Some Courts have suggested that the language "any judgment regarding the granting of relief" in clause (i) has a broader meaning than the language

12

"any other decision or action . . . specified under this subchapter to be in the discretion of the Attorney General" in clause (ii). *See Fofana v. Mayorkas*, 2024 WL 898657, at *6 (D. Minn. Mar. 1, 2024); *Mia*, 2023 WL 7091915, at *5. Thus, the Supreme Court's broad reading of clause (i) might not apply to clause (ii), which could be limited to stripping jurisdiction over certain discretionary actions rather than the over the entire adjustment-of-status process. *See Fofana*, 2024 WL 898657, at *6 (suggesting that (i) applies to "the entire package of inputs to the ultimate discretionary judgment," while (ii) applies only to the specific "decisions or actions . . . left to the Secretary's discretion"); *Mia*, 2023 WL 7091915, at *5.

However, this Court has previously rejected the argument that clause (ii) should be read more narrowly than clause (i). *See Morina*, 2023 WL 22617, at *9–10. The Supreme Court has described clauses (i) and (ii) as covering "decisions of the same genre," and stated that the provisions should be "read harmoniously." *Kucana*, 558 U.S. at 246–47. Clause (ii) is a "catchall" for provisions committing discretion to the Attorney General which are not listed in clause (i). *Id.* Thus, the two provisions work together to prevent Courts from reviewing "decisions that are statutorily specified to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Morina*, 2023 WL 22617, at *10. There is no discernable reason "why Congress would have wanted to limit judicial review for certain categories of immigrants moving for adjustment of status to a different degree than others," when all adjustment-of-status applications are similarly committed to the discretion of the Attorney General. *Id.* Moreover, the language of the statute belies the contention that "decision or action" from clause (ii) is a narrower term than "any judgment regarding the granting of relief" from clause (i). The statute speaks of "any *other* decision or action" committed to the discretion of the Attorney General, suggesting that the enumerated judgments regarding the granting of relief in

13

clause (i) are in fact a subcategory of the total universe of decisions or actions committed to the Attorney General's discretion. Thus "subclause (ii), if anything, is best read as covering a broader swath of decisions and actions than subclause (i)." *Morina*, 2023 WL 22617, at *10; *see Azatullah*, 2023 WL 5935028, at *5. It is no help to Plaintiff that her adjustment-of-status application was under Section 1159(b) rather than one of the provisions enumerated in clause (i).

Plaintiff argues that § 1252(a)(2)(B) is inapplicable because "failing to account for hardship" is agency inaction, not agency action. Dkt. No. 18 at 14. Plaintiff cites cases holding that courts may review "delay where USCIS is obligated to act even if the ultimate decision is unreviewable." *Id.* at 14–15 (citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021)); *see Chen v. Mayorkas*, 2024 WL 2846911, at *4 (E.D.N.Y. June 5, 2024) ("The most natural meaning of the statute in question here is that it bars judicial review of agency decisions and actions regarding waivers, not agency inactions."). However, Plaintiff's claim is not that the agency has failed to act on her application. It is that the agency has acted improperly in denying her application, a claim this Court is jurisdictionally barred from reviewing. Plaintiff cannot create jurisdiction over her claim by reframing it as inaction. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 331 (2d Cir. 2006) ("[P]etitioner's mere assertion that the IJ and the BIA 'fail[ed] to apply the law' does not convert a mere disagreement with the IJ's factual findings and exercise of discretion into a constitutional claim or a question of law.").

Finally, it is notable that even assuming *Patel* left the door open for district court review of some legal or constitutional issues arising within adjustment-of-status determinations, Plaintiff's claim presents the exact sort of quarrel with an exercise of agency discretion that would be squarely precluded by the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B). The basis of Plaintiff's argument is that USCIS did not properly consider the hardship she would suffer if

14

denied adjustment of status, "including potential deportation to China." Dkt. No. 1 ¶ 57; Dkt. No. 18 at 2–3, 12–13. Although the USCIS decision does not use the term "hardship," the agency determined that Plaintiff should not be given lawful permanent residency in the United States, despite her length of residence and legal relatives here, because her claims of religious persecution in China were likely fraudulent. Dkt. No. 15–3 at 8. In addition, it stated that Plaintiff would not at this time lose her asylum status or work authorization. *Id.* at 8–9. Although the agency could have explicitly stated that it did not find that the "hardship" of being denied lawful permanent residency overcame the factors favoring denial, this is little more than a dispute over phrasing. *See Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) ("[T]he agency does not commit an 'error of law' every time an item of evidence is not explicitly considered or is described with imperfect accuracy."). Plaintiff presents no issue of statutory interpretation regarding the language of § 1159(b) or application of that statute to her claim. In substance, Plaintiff's complaint is that the agency placed insufficient weight on the difficulties that denial of her application might cause for her. Though dressed up with the rhetoric of an issue of law, Plaintiff's challenge is to the agency's exercise of discretion. *See Xiao Ji Chen*, 471 F.3d at 329 ("[W]hen analysis of the arguments raised by the petition for judicial review reveals that they do not in fact raise any reviewable issues, the petitioner cannot overcome this deficiency and secure review by using the rhetoric of a 'constitutional claim' or 'question of law' to disguise what is essentially a quarrel about fact-finding or the exercise of discretion."); *Guyadin*, 449 F.3d at 468; *Saloum v. U.S. Citizenship & Immigr. Servs.*, 437 F.3d 238, 243 (2d Cir. 2006).[7]

---

[7] Plaintiff relies on *Perez-Trujillo v. Garland*, in which the First Circuit held that the BIA's settled course of adjudication required the BIA to "consider in an individualized manner the hardship that [Perez-Trujillo] might suffer if he were required to return to El Salvador," and that its failure to do so required remand. 3 F.4th 10, 22 (1st Cir. 2021). Even assuming that internal precedent requires the agency to make an individualized assessment of all relevant factors when

15

By statute and under Supreme Court precedent, this Court lacks jurisdiction to review Plaintiff's claims of error in the adjudication of her application for adjustment of status. Any legal error in such determination may be raised through a petition to the Court of Appeals on review of a final order of removal. *See* 8 U.S.C. § 1252(a)(2)(D); *Abuzeid*, 62 F.4th at 585–86; *Ud Din v. Garland*, 72 F.4th 411, 422 (2d Cir. 2023) (reviewing such a petition).

Plaintiff may not escape this conclusion by bringing a claim under the APA. "[J]udicial review of agency action is not available under the APA where such review is limited by another statute—here, the INA." *Ying Lin v. United States Dep't of Homeland Sec.*, 699 F. App'x 44, 46 (2d Cir. 2017). Therefore, the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B) also requires dismissal of Plaintiff's APA claim. *See Morina*, 2023 WL 22617, at *10.

Plaintiff's due process claim is equally unavailing. Her complaint simply states in a conclusory fashion that the denial of her application violated due process. Dkt. No. 1 ¶ 1. A "talismanic invocation of the language of 'due process'" is insufficient to confer jurisdiction over an argument which is otherwise unreviewable. *Alvarez v. Garland*, 33 F.4th 626, 649 (2d Cir. 2022) (quoting *Saloum*, 437 F.3d at 243).

---

adjudicating an application for adjustment of status as a matter of law—a significant assumption—it is not apparent that USCIS failed to do so here. In *Perez-Trujillo*, the BIA conspicuously ignored substantial evidence of "the special risk that [Perez-Trujillo] faces of being severely harmed due to his past gang membership," allowing the First Circuit to find that "there was no weighing of that evidence at all." *Id.* at 23–24. Here, Plaintiff was not in fact being deported, nor was there any obvious evidence of hardship related to the denial of her adjustment of status. Therefore, the agency's failure to expressly discuss such hardship does not imply that the agency failed to make an individualized assessment of relevant evidence.

**CONCLUSION**

Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 13.

SO ORDERED.

Dated: January 17, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge